# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

**VINCENT R. POLISI, II,**                                            **JURY TRIAL DEMANDED**

Plaintiff,                                            Case No.:

v.

**GOVERNOR RON DESANTIS,**

in his individual and official capacity, et al.,

Defendants.

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, PUNITIVE, AND MONETARY RELIEF, and DEMAND FOR JURY TRIAL

### *DISCLAIMER REGARDING PLEADING LENGTH*

*Plaintiff acknowledges that the Eleventh Circuit and the Middle District of Florida have consistently warned against "shotgun pleadings." Plaintiff does not intend to obscure or conflate claims; rather, this Complaint is structured to provide clarity on each Defendant's specific role and the factual basis for each claim. However, due to the complex nature of this alleged ongoing intertwined conspiracy—encompassing both criminal and civil proceedings, involving multiple state actors operating under color of law, and requiring extensive factual detail—Plaintiff has necessarily included a lengthy narrative to ensure each Defendant has sufficient notice of the allegations against them. Accordingly, the length of this Complaint reflects the depth and breadth of the asserted wrongdoing, not an effort to create confusion or impose improper burdens on the Court.*

1.      This action arises from a coordinated conspiracy within the Ninth Judicial Circuit in Osceola County, Florida, participating with other state actors operating under the color of law and private individuals depriving Plaintiff of

constitutional rights stemming from criminal case State v. Polisi, 2023-MM-2683, and civil case Wendy Polisi v. Vincent R. Polisi, II, 492024DR000135.

2.    Defendants, acting under color of state law, violated Plaintiff's rights through retaliatory abuse of process, judicial misconduct, and prosecutorial overreach.

3.    Defendants' actions constitute a conspiracy to violate civil rights under 42 U.S.C. § 1983 and § 1985(3).

4.    Defendants violated Plaintiff's Fourth Amendment rights against unreasonable search and seizure.

5.    Defendants violated Plaintiff's Fifth and Fourteenth Amendment rights to due process and equal protection.

6.    Defendants' actions resulted in false arrest, wrongful prosecution and unconstitutional incarceration of Plaintiff.

7.    The conspiracy involved judicial officers, state prosecutors, private individuals, and BAR-certified attorneys.

This action seeks:

- Declaratory relief, injunctive relief, and compensatory and punitive damages in an amount to be determined at trial as appropriate for egregious violations of Plaintiff's constitutional rights under the First, Fifth, Sixth, and Fourteenth Amendments.

- Plaintiff seeks punitive damages against the individuals (except no punitive damages are sought against governmental entities) for their willful, malicious, or reckless conduct, in an amount to be determined by the jury.

- Attorney's fees and costs under 42 U.S.C. § 1988 should attorneys be retained.

- A jury trial on all triable issues.

## II. JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3)-(4), as this action arises under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments of the U.S. Constitution, and under 42 U.S.C. §§ 1983 ("Section 1983") and 1985 ("Section 1985"), which provide a federal cause of action for the deprivation of constitutional rights under color of state law.

2.      This Court has jurisdiction over State Executive Officer, Governor Ron DeSantis in both his official and individual capacities under the following authorities:

•      Ex parte Young, 209 U.S. 123 (1908) – Establishes an exception to Eleventh Amendment immunity, permitting suits against state officials for ongoing violations of federal law.

•      42 U.S.C. § 1983 – Authorizes claims against state actors, including executive officials, who, under color of law, deprive individuals of federally protected rights.

•      Dodds v. Richardson, 614 F.3d 1185, 1195 (10th Cir. 2010) – Holds that a supervisory official may be liable under Section 1983 if they had actual or constructive notice of constitutional violations and failed to act.

•      Pulliam v. Allen, 466 U.S. 522 (1984) – Confirms that state officials, including judges and executives, are not immune from injunctive relief in civil rights cases.

3.      Governor DeSantis' official capacity liability is premised on his failure to intervene despite actual notice of systemic constitutional violations, thereby allowing them to continue. His individual capacity liability arises from his deliberate indifference and failure to remedy known civil rights violations, rendering him personally complicit under Dodds.

4.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1)–(2) because:

• A substantial part of the events giving rise to Plaintiff's claims occurred in Osceola County, Florida, which falls within the jurisdiction of the Middle District of Florida.

• Defendant Governor DeSantis, in his official capacity, is headquartered in Tallahassee, Florida, and exercises authority over state agencies and judicial appointments statewide, affecting Plaintiff's rights within this district.

5. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) for any state law claims arising from the same set of operative facts.

## III. GOVERNOR RON DESANTIS' LIABILITY UNDER 42 U.S.C. § 1983 (In His Official and Individual Capacities)

1. Governor Ron DeSantis, as Chief Executive of the State of Florida, is legally responsible for ensuring that state actors uphold constitutional rights. His authority extends to oversight of state judicial conduct, law enforcement, and prosecutorial discretion within the Ninth Judicial Circuit.

2. Under 42 U.S.C. § 1983, a state official may be held liable for constitutional violations where they had actual or constructive notice of ongoing rights deprivations and failed to act. (Dodds v. Richardson, 614 F.3d 1185, 1195 (10th Cir. 2010)).

3. Governor DeSantis received formal written notice of systemic judicial and prosecutorial misconduct via certified return receipt letters dated June 3, 2024, and June 5, 2024, detailing:

• False imprisonment based on fabricated charges;

• Malicious prosecution by state attorneys;

• Judicial collusion and procedural manipulation to deprive Plaintiff of due process and equal protection.

4. Despite having actual knowledge of these violations, Governor DeSantis failed to act, constituting deliberate indifference under Dodds and rendering him liable in his individual capacity.

5.      Ex parte Young, 209 U.S. 123 (1908), permits injunctive relief against state officials engaging in ongoing constitutional violations. Because the civil rights deprivations are ongoing, sovereign immunity does not apply, and Governor DeSantis may be enjoined from further allowing these violations to continue.

6.      Governor DeSantis' failure to exercise executive oversight enabled a coordinated conspiracy to violate Plaintiff's civil rights under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3).

7.      As a direct result of Governor DeSantis' inaction, Plaintiff suffered:

•      Unlawful arrest and incarceration without probable cause;

•      Prolonged legal hardship due to malicious prosecution;

•      Deprivation of parental rights through manipulated court rulings;

•      Financial ruin from coerced legal battles orchestrated by judicial actors he appointed.

8.      Because the constitutional violations are ongoing, Plaintiff seeks declaratory and injunctive relief barring Governor DeSantis from allowing continued judicial misconduct, wrongful prosecutions, and civil rights deprivations.

## IV. FLORIDA SUPREME COURT'S REVIEW & JUDGE SHAFFER'S DEFIANCE

1.      On February 11, 2025, Plaintiff filed a Writ of Prohibition with the Florida Supreme Court (Case No. SC2025-0198) challenging Judge Laura Shaffer's jurisdiction over the criminal contempt proceedings in Osceola County Case No. 492024DR000135.

2.      On February 12, 2025, the Florida Supreme Court acknowledged receipt of the Writ and assigned a case number, confirming that the matter was docketed and pending review.

3.      Despite allowing over a dozen critical motions to languish for months —including those concerning the best interests of a minor child, a Motion for

Default based on 122 days of abandonment by the petitioner, and multiple other substantive matters—Judge Shaffer took only one immediate action upon receiving notice of the Supreme Court's acknowledgment: she summarily denied the Motion to Disqualify.

4.    This selective and self-serving response demonstrates that Judge Shaffer's priority was not the fair administration of justice, but instead preserving her control over the case in retaliation for Plaintiff's Supreme Court filing.

5.    By denying the Motion to Disqualify within 24 hours while simultaneously refusing to rule on:

•    The Motion for Default based on the petitioner's prolonged abandonment (which, if granted, would have nullified all subsequent court actions),

•    Motions directly impacting the welfare of a minor child, and

•    Other pending substantive matters affecting fundamental rights,

Judge Shaffer violated due process, judicial ethics, and the principles of fair adjudication.

6.    This conduct constitutes judicial misconduct and retaliation in violation of:

•    Florida Rule of Judicial Administration 2.330(f) – Mandates immediate recusal upon the filing of a legally sufficient motion for disqualification.

•    State ex rel. Schwarz v. Heffernan, 173 So. 2d 140 (Fla. 1965) – Holds that once the Florida Supreme Court assumes jurisdiction, lower courts are prohibited from taking further action.

•    Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009) – Establishes that judicial bias and partiality require recusal when the probability of actual bias is too high to be constitutionally tolerable.

7.    Judge Shaffer's immediate denial of her disqualification—while deliberately ignoring motions concerning Plaintiff's fundamental rights—demonstrates:

•    Judicial retaliation against Plaintiff for invoking Supreme Court review.

•    A blatant misuse of judicial discretion to shield herself from appellate oversight.

•    A denial of Plaintiff's due process rights by allowing substantive motions to remain unresolved while fast-tracking her own self-preserving ruling.

8.    Plaintiff's constitutional rights were further violated by Judge Shaffer's misconduct, necessitating immediate federal intervention to prevent continued harm and enforce judicial compliance with established legal principles.

## VI. FEDERAL INTERVENTION IS REQUIRED

1.    Plaintiff has exhausted all state-level remedies, as evidenced by the Florida Supreme Court's acknowledgment of the Writ of Prohibition in Case No. SC2025-0198, indicating that state court intervention has been sought but remains unresolved.

2.    Federal judicial oversight is warranted under:

•    28 U.S.C. § 1651 (All Writs Act) – Grants federal courts the authority to issue orders to protect their jurisdiction and prevent constitutional violations.

•    28 U.S.C. § 1367(a) – Provides supplemental jurisdiction over state claims arising from the same set of facts.

3.    Precedent supports federal court intervention in cases of unconstitutional state court actions, bad-faith judicial conduct, and due process violations:

•    Steffel v. Thompson, 415 U.S. 452 (1974) – Federal courts can enjoin unconstitutional state court actions, even if a state appellate process is pending.

•    Dombrowski v. Pfister, 380 U.S. 479 (1965) – Establishes that federal intervention is justified when state courts act in bad faith or demonstrate a pattern of constitutional violations.

4.      Plaintiff asserts that the circumstances of this case meet the criteria for federal intervention, as outlined by Steffel, Dombrowski, and the All Writs Act.

## VII. FLORIDA SUPREME COURT'S ROLE IN ESTABLISHING AN EXHAUSTION OF REMEDIES

1.      Plaintiff has pursued and exhausted all available state remedies, including:

•      Filing a Verified Motion to Disqualify Judge Shaffer, which was improperly denied after Judge Shaffer was notified of the Writ of Prohibition and the case number assigned by the Florida Supreme Court.

•      Filing an Emergency Motion to Stay Contempt Proceedings, which was completely ignored, further depriving Plaintiff of due process protections.

•      Filing a Writ of Prohibition with the Florida Supreme Court, which the Court has acknowledged and is currently reviewing in Case No. SC2025-0198.

2.      Despite these efforts, state courts have either refused to act or continued violating Plaintiff's rights, rendering state remedies inadequate and ineffective.

3.      Exhaustion of remedies is a prerequisite for federal intervention, and Plaintiff has met this requirement under:

•      28 U.S.C. § 2254(b)(1)(B)(ii) – Federal intervention is warranted where state remedies are ineffective or unavailable.

•      Moore v. Sims, 442 U.S. 415 (1979) – A state's failure to provide meaningful remedies justifies federal court intervention.

•      Patsy v. Board of Regents, 457 U.S. 496 (1982) – Section 1983 does not require exhaustion of state remedies where fundamental constitutional rights are at stake.

4.      Because state remedies have been exhausted and remain inadequate, federal intervention is necessary to prevent further constitutional deprivations.

## VIII. LEGAL PRECEDENT SUPPORTING STATE OVERSIGHT OVER STATE COURT MISCONDUCT

1.      Federal courts have authority to intervene when state court actors engage in unconstitutional conduct, retaliatory rulings, or demonstrate a lack of impartiality. The following precedents establish the basis for federal oversight:

- Pulliam v. Allen, 466 U.S. 522 (1984) – Judicial immunity does not bar injunctive relief against state judges who engage in unconstitutional conduct. Because Plaintiff seeks injunctive relief, Judge Shaffer's status as a sitting judge does not preclude federal intervention.

- Younger v. Harris, 401 U.S. 37 (1971) – Federal courts should not abstain from intervening in state proceedings where state actors act in bad faith, for purposes of harassment, or in violation of due process. Judge Shaffer's selective denial of disqualification—while ignoring all substantive motions—constitutes retaliatory judicial misconduct justifying federal oversight.

- Gibson v. Berryhill, 411 U.S. 564 (1973) – Federal courts may intervene when state judicial bodies lack impartiality. Judge Shaffer's pattern of rulings—favoring certain parties while weaponizing contempt proceedings against Plaintiff—demonstrates unconstitutional judicial bias, meeting the standard set in Gibson.

2.    These precedents confirm that federal intervention is justified in this case, where state court actors have engaged in:

- Retaliatory rulings against Plaintiff for invoking Supreme Court review.

- Bad-faith judicial conduct that deprives Plaintiff of due process.

- Systemic misconduct requiring injunctive relief to prevent further constitutional violations.

3.    Accordingly, Plaintiff asserts that federal oversight is necessary to protect his constitutional rights and to prevent further violations by state judicial actors.

## IX. FEDERAL JURISDICTION IS PROPER AND NECESSARY

1. The Florida Supreme Court's pending review of Plaintiff's Writ of Prohibition in Case No. SC2025-0198 confirms that lower court rulings are subject to appellate review. However, state appellate review has proven inadequate and ineffective due

to Judge Shaffer's continued defiance of judicial ethics and due process. Despite the Florida Supreme Court's acknowledgment of the Writ, Judge Shaffer has persisted in issuing unconstitutional rulings, including advancing a retaliatory contempt hearing that threatens Plaintiff's fundamental rights.

2. Judge Shaffer's continued actions—despite notice that the Florida Supreme Court acknowledged receipt of Plaintiff's Writ—constitute judicial misconduct and bad faith. Her refusal to recuse herself, selective denial of disqualification while ignoring substantive motions, and retaliatory rulings against Plaintiff demonstrate an abuse of judicial authority.

3. Federal intervention is legally justified under controlling U.S. Supreme Court precedent:

• Mitchum v. Foster, 407 U.S. 225 (1972) – Establishes that 42 U.S.C. § 1983 is an express exception to the Anti-Injunction Act (28 U.S.C. § 2283), permitting federal courts to enjoin unconstitutional state proceedings.

• Steffel v. Thompson, 415 U.S. 452 (1974) – Holds that federal courts may intervene in pending state proceedings where there is an ongoing violation of federal constitutional rights.

• Pulliam v. Allen, 466 U.S. 522 (1984) – Confirms that judicial immunity does not prevent federal courts from granting injunctive relief against state judges engaged in unconstitutional conduct.

4. Because Plaintiff has exhausted all available state remedies, this case is now ripe for federal relief. The Florida Supreme Court's acknowledgment of the Writ does not provide immediate relief, nor does it prevent Judge Shaffer from issuing additional unconstitutional rulings in the interim. State remedies have proven inadequate to stop the ongoing constitutional deprivations.

5. Plaintiff requests this Court's intervention to:

• Prevent further constitutional violations,

• Enforce due process rights, and

•   Uphold the rule of law by restraining state judicial misconduct.

## X. PARTIES
**Plaintiff:**

Vincent R. Polisi, II, is:
  •   A United States citizen;
  •   An honorably discharged U.S. veteran; and
  •   A resident of Florida.

**Defendants:**

*Note: Given the anticipated invocation of sovereign immunity as a defense to evade accountability, Plaintiff explicitly details Governor Ron DeSantis' actions and omissions to preemptively foreclose any jurisdictional or procedural objections to his inclusion in this case.*

*Although such an extensive factual exposition regarding a state executive may not be customary, it is legally necessary due to Governor DeSantis' direct knowledge of, and failure to act upon, systemic constitutional violations.*

*At the time of the events detailed herein, Governor DeSantis was formally notified immediately after the dismissal of State v. Polisi, Case No. 2023-MM-2683, yet failed to act despite being provided with clear evidence of the malicious criminal prosecution and constitutional violations.*

*His deliberate inaction and failure to exercise executive oversight emboldened the state actors involved, allowing the continued deprivation of Plaintiff's constitutional rights. This failure was further compounded when Governor DeSantis appointed one of the named defendants, Andrew Asher Bain, to a judicial position despite alleged prior misconduct.*

**Governor Ron DeSantis (Individual & Official Capacities)**

1.      Governor Ron DeSantis is sued in both his official and individual capacities for his role in failing to intervene despite actual notice of ongoing constitutional violations.

2.      As Chief Executive of the State of Florida, Governor DeSantis is responsible for ensuring that state actors uphold constitutional rights.

3.      Plaintiff provided Governor DeSantis with formal written notice of these violations within the Ninth Judicial Circuit, City of Saint Cloud, and Osceola County, via certified USPS and UPS Ground letters dated June 3, 2024, and June 5, 2024.

4.      Despite being formally notified, Governor DeSantis failed to act, constituting deliberate indifference and tacit approval of a coordinated conspiracy to violate Plaintiff's civil rights.

5.      Governor DeSantis appointed Defendant Judge Andrew Asher Bain despite alleged knowledge of Bain's involvement in judicial misconduct.

6.      Plaintiff asserts that Governor DeSantis' actions and omissions violate:

•      42 U.S.C. § 1983 (failure to prevent constitutional violations);

•      42 U.S.C. § 1985 (conspiracy to interfere with civil rights); and

•      The Fourteenth Amendment's Due Process and Equal Protection Clauses.

7.      Governor DeSantis is not entitled to Eleventh Amendment immunity under:

•      Ex parte Young, 209 U.S. 123 (1908) – Establishes that state officials may be sued in their official capacity for ongoing constitutional violations.

•     Pulliam v. Allen, 466 U.S. 522 (1984) – Confirms that state officials, including judges and executives, are subject to injunctive relief for civil rights violations.

8.     Federal jurisdiction over Governor DeSantis is proper under 28 U.S.C. § 1651 (All Writs Act), which allows federal courts to intervene when state officials obstruct justice and violate constitutional protections.

9.     Plaintiff alleges that Governor DeSantis' actions contributed to:

•     Wrongful imprisonment;

•     Malicious prosecution; and

•     Deprivation of property and parental rights.

10.     Plaintiff possesses documentary evidence of Governor DeSantis' knowledge of these constitutional violations, including:

•     Certified letters sent to the Governor's office;

•     Public records of Judge Andrew Bain's appointment; and

•     The absence of executive action or investigation into these violations.

11.     Governor DeSantis' inaction has caused ongoing harm to Plaintiff, including:

•     Unlawful incarceration;

•     Loss of parental rights;

•     Deprivation of property;

- Obstruction of justice; and

- Malicious prosecution.

12.    Governor DeSantis is not entitled to Eleventh Amendment or qualified immunity under:

- Ex parte Young, 209 U.S. 123 (1908);

- Harlow v. Fitzgerald, 457 U.S. 800 (1982) (qualified immunity does not apply where officials violate clearly established rights); and

- Article X, Section 13 of the Florida Constitution, which authorizes the Legislature to waive sovereign immunity for constitutional violations.

13.    Plaintiff seeks injunctive relief and monetary damages against Governor DeSantis for ongoing constitutional violations resulting in irreparable harm.

**Judge Laura Shaffer**, in her individual and official capacities, Ninth Judicial Circuit Court Judge.

**Judge Stefania Jancewicz**, in her individual and official capacities, Ninth Judicial Circuit Court Judge.

**Judge Christy Collins**, in her individual and official capacities, Ninth Judicial Circuit Court Judge.

**Judge Michael Snure**, in his individual and official capacities, Ninth Judicial Circuit Court Judge.

**Judge Andrew Asher Bain**, in his individual and official capacities, Ninth Judicial Circuit Court Judge.

**Chief Judge Lisa Munyon**, in her individual and official capacities, Chief Judge of the Ninth Judicial Circuit.

**Christopher Hill**, in his individual and official capacities, Assistant State Attorney for Osceola County.

**Charles Spiteri**, in his individual and official capacities, Assistant State Attorney for Osceola County.

**City of Saint Cloud, Florida**, a municipal entity.

**Saint Cloud Police Department**, a municipal entity.

**Chief of Police Douglas Goerke**, in his individual and official capacities, Chief of Saint Cloud Police Department.

**Officer Kailee Fessock**, in her individual and official capacities, Saint Cloud Police Department Officer.

**Officer Roberto Perez**, in his individual and official capacities, Saint Cloud Police Department Officer.

**Officer Jan Martinez**, in his individual and official capacities, Saint Cloud Police Department Officer.

**Daniel F. Mantzaris, Esq.**, in his individual and official capacities, City Attorney for Saint Cloud, Florida.

**Sheriff Marcus R. Lopez**, in his individual and official capacities, Sheriff of Osceola County.

**Christina M. Green, Esq.**, in her individual and official capacities, private attorney involved in litigation.

**Michael J. Vaghaiwalla, Esq.**, in his individual and official capacities, private attorney involved in litigation.

**Wendy Polisi**, in her individual capacity.

## XI. FACTUAL ALLEGATIONS

      1.     Unlawful Seizure and Detention Without Probable Cause

a. On November 1, 2023, Plaintiff was unlawfully seized and forcibly removed from his residence by Defendants Officers Roberto Perez and Jan Martinez of the Saint Cloud Police Department and was illegally detained in his own driveway.

b. This unconstitutional seizure occurred despite the officers' on-camera admission that they lacked:

- Reasonable articulable suspicion of a crime; and

- Probable cause for Plaintiff's removal or detention.

c. The sole basis for this unlawful seizure was a knowingly false police report filed by Defendant Wendy Polisi, which was used as a pretext for an illegal dispossessory action against Plaintiff.

d. When Plaintiff explicitly informed officers—on camera—that a lawful detention requires reasonable articulable suspicion of a specific crime, the officers evasively claimed they were "investigating", a pretextual justification meant to retroactively manufacture probable cause in violation of the Fourth Amendment.

**Fabrication of Charges & Collusion to Manufacture Probable Cause**

a. Subsequent discovery in the ensuing criminal case (State v. Polisi, 2023-MM-2683) uncovered irrefutable evidence that Defendants conspired to fabricate charges by colluding on police-issued body cameras while standing in Plaintiff's driveway.

b. This orchestrated effort to falsify evidence constitutes:

- Malicious prosecution;

- False imprisonment; and

- A clear violation of Plaintiff's Fourth and Fourteenth Amendment rights, actionable under 42 U.S.C. § 1983.

c. Unable to manufacture probable cause at the scene, Defendants Kailee Fessock, Roberto Perez, and Jan Martinez left and deliberately submitted false and misleading information to Defendant Judge Michael Snure.

d. Judge Snure, without scrutiny, rubber-stamped and signed an arrest warrant for:

• "Resisting Without Violence"; and

• "Violation of Probation" (despite Plaintiff not being on probation in Florida).

e. The latter charge was knowingly false and was strategically added to negate bond eligibility, ensuring Plaintiff's prolonged incarceration. This gross abuse of judicial authority constituted an unlawful deprivation of liberty in violation of the Fourth and Fourteenth Amendments.

3.    **Unlawful Arrest and Incarceration**

a. On November 6, 2023, Plaintiff was unlawfully arrested by Defendant Officer Kailee Fessock based on these fabricated allegations.

b. This wrongful arrest resulted in:

• Unconstitutional pretrial detention lasting nine days without bond at the Osceola County Jail.

c. This pretrial incarceration was punitive in nature, further demonstrating that the charges were knowingly false and meant to suppress Plaintiff's rights.

4.    **Malicious Prosecution by the State Attorney's Office**

a. Following Plaintiff's wrongful incarceration, he was subjected to a knowingly malicious prosecution orchestrated by:

• Defendant Assistant State Attorneys Christopher Hill and Charles Spiteri; and

• Defendant Judge Andrew Asher Bain, who, at the time, was State Attorney for Osceola and Orange Counties.

b. Prosecutors engaged in deliberate misconduct, including:

- Suppressing exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963);

- Proceeding without probable cause, despite knowing the allegations were fabricated; and

- Engaging in a retaliatory prosecution designed to silence Plaintiff and deprive him of his constitutional rights.

5.     **Dismissal of Charges & Exposure of Prosecutorial Misconduct**

a. Exercising his Faretta right to self-representation, Plaintiff, acting in pro se capacity, directly confronted State Attorneys Hill and Spiteri in open court.

b. As a pro se defendant, Plaintiff:

- Filed and argued an Emergency Richardson Hearing, exposing:

- Prosecutorial misconduct;

- Discovery violations; and

- Brady violations—all irrefutably documented via police body-worn camera footage.

c. As a direct result of these revelations, the State Attorney's Office dismissed State v. Polisi, 2023-MM-2683, on May 22, 2024.

6.     **Systemic Abuse of Power Justifying Federal Intervention**

a. The actions of the State Attorney's Office, law enforcement officers, and judicial officers in this case constitute a flagrant abuse of power, an unlawful deprivation of constitutional rights, and a miscarriage of justice that demands immediate federal judicial intervention.

b. The fabrication of probable cause, retaliatory prosecution, and abuse of pretrial detention violated Plaintiff's rights under:

- The Fourth Amendment (unlawful seizure and false arrest);

- The Fourteenth Amendment (due process violations and malicious prosecution); and

- 42 U.S.C. § 1983 (deprivation of constitutional rights under color of law).

c. These egregious violations warrant federal oversight, as state actors have demonstrated a pattern of judicial and prosecutorial misconduct that necessitates injunctive relief, compensatory damages, and punitive measures against the responsible parties.

## XII. GOVERNOR RON DESANTIS' FAILURE TO ACT & COMPLICITY IN CONSTITUTIONAL VIOLATIONS

### A. Executive Oversight Failure

1. **Governor DeSantis' Duty and Notification**
   a. As Governor of Florida, **Defendant Ron DeSantis had a constitutional and legal duty** to ensure state actors upheld federal and state law, including protecting citizens from judicial misconduct, malicious prosecution, and civil rights deprivations.
   b. Plaintiff **formally notified Governor DeSantis immediately after the dismissal** of **State v. Polisi, Case No. 2023-MM-2683**, of the systemic constitutional violations occurring within the **Ninth Judicial Circuit**.
   c. Despite this **direct notification**, Governor DeSantis **failed to take any action** to investigate or remedy these violations.

2. **Governor DeSantis' Inaction and Its Consequences**
   a. Despite being informed of:
   i. **Judicial misconduct**,
   ii. **Malicious prosecution**, and
   iii. **Due process violations**,
   **Governor DeSantis took no corrective measures**, thereby allowing the continued deprivation of Plaintiff's constitutional rights.
   b. **Neither Governor DeSantis nor any representative from his office**

responded to Plaintiff by any means, including:

i. **U.S. mail**,

ii. **Telephone**,

iii. **Electronic communication**, or

iv. **In-person contact**.

## B. Coordinated Campaign of Retaliation

3. **Retaliatory Actions Following Dismissal of Charges**

a. Following the dismissal of **State v. Polisi, Case No. 2023-MM-2683**, Defendants—including judicial officers, prosecutors, and law enforcement—**continued their coordinated campaign of retaliation** against Plaintiff.

b. This retaliation took the form of:

i. **Retaliatory judicial rulings**,

ii. **Procedural manipulation**, and

iii. **Collusion in a civil contempt proceeding** (**Wendy Polisi v. Vincent Polisi, Case No. 492024DR000135**).

c. **These actions deprived Plaintiff of his due process and equal protection rights** under the **Fourteenth Amendment**.

4. **Procedural Manipulation and Collusion**

a. **Bad-faith litigation tactics** were employed to financially exhaust and obstruct Plaintiff's access to justice, including:

i. **Deliberate delays in ruling on critical motions**, and

ii. **Selective enforcement of procedural rules to disadvantage Plaintiff**.

b. **Judge Laura Shaffer**—acting in concert with **Wendy Polisi and her legal counsel**—accelerated a **baseless contempt proceeding** against Plaintiff, despite the **absence of admissible evidence**.

c. **This abuse of judicial discretion and selective enforcement** constitutes a **violation of Plaintiff's due process rights** under the **Fifth and Fourteenth Amendments**.

## C. Deprivation of Constitutional Rights

5. **Violations of Plaintiff's Fundamental Rights**

a. As a result of the **Governor's failure to act**, Plaintiff suffered the following constitutional violations:

i. **Wrongful imprisonment**;

ii. **Malicious prosecution**;

iii. **Unlawful deprivation of property** without due process;

iv. **Interference with parental rights**, violating Plaintiff's fundamental right to parent; and

v. **Systematic obstruction of access to justice**.

6. **Governor DeSantis' Role in These Violations**

a. Governor DeSantis' **deliberate indifference allowed these violations to continue**, making him complicit under:

i. **42 U.S.C. § 1983** (failure to prevent known constitutional violations), and

ii. **42 U.S.C. § 1985(3)** (conspiracy to interfere with civil rights).

### D. Civil Rights Conspiracy Under 42 U.S.C. § 1985

7. **Elements of Civil Rights Conspiracy**

a. A **civil rights conspiracy under 42 U.S.C. § 1985(3)** requires:

i. **An agreement between two or more persons** to deprive someone of their constitutional rights;

ii. **Overt actions taken in furtherance of the conspiracy**; and

iii. **Resulting harm to the Plaintiff**.

8. **Governor DeSantis' Participation in the Conspiracy**

a. While Governor DeSantis **may not have personally participated in each act**, his **inaction despite direct knowledge of systemic constitutional violations** constitutes:

i. **Tacit approval of the conspiracy**; and

ii. **A substantial factor in enabling the continued deprivation of Plaintiff's rights**.

### E. Conclusion

9. **Governor DeSantis' failure to exercise his executive authority** to address known constitutional violations, combined with the coordinated misconduct of judicial officers, prosecutors, and law enforcement, resulted in a **pervasive system of rights deprivation**.

10. **This systemic failure constitutes a civil rights conspiracy under federal law**, making Governor DeSantis legally complicit in the unconstitutional actions taken against Plaintiff.

11. **Plaintiff seeks declaratory relief, injunctive relief, and compensatory damages against Governor DeSantis for his role in enabling these constitutional violations.**

## XIII. JUDGE SHAFFER'S UNCONSTITUTIONAL ACTIONS: RETALIATION AND DUE PROCESS VIOLATIONS

### A. Weaponization of Contempt to Unlawfully Punish Plaintiff

1. Judge Laura Shaffer is misusing the contempt power to retaliate, silence, and punish Plaintiff, violating his due process rights under the Fifth and Fourteenth Amendments. Courts have long held that weaponizing contempt proceedings to suppress litigants, particularly in family law matters, constitutes a grave constitutional violation.

2. Florida Rule of Judicial Administration 2.330(f) mandates that a judge faced with a legally sufficient motion for disqualification must immediately step aside and has no discretion to deny it. By:

   ° Ignoring this requirement, and
   ° Rushing forward with a contempt proceeding against Plaintiff, Judge Shaffer openly defied established judicial ethics, due process protections, and binding Florida law.

### B. Effort to Unconstitutionally Strip Plaintiff of His Right to Self-Representation

3. Judge Shaffer, in collusion with board-certified attorney Michael Vaghaiwalla, has prioritized an unlawful contempt hearing ahead of all substantive motions that have been languishing for months. This deliberate scheduling is not a matter of legal necessity but a calculated strategy designed to achieve three unconstitutional objectives:

## 1. To Incarcerate Plaintiff on a Fraudulent Contempt Charge

a. Judge Shaffer and Vaghaiwalla are attempting to imprison Plaintiff for contempt, despite:

- Judicial bias and procedural irregularities tainting the entire proceeding.
- The State and Vaghaiwalla's only witness—an attorney who:

i. Has been **twice admonished and sanctioned by the Florida Bar** for inappropriate out-of-court emails to pro se litigants.

ii. Represented **Wendy Polisi for only three weeks** before withdrawing immediately after receiving a **21-Day Safe Harbor Letter** from Plaintiff for well documented misconduct involving open defiance of a Court Order.

- The fact that **the contempt motion is predicated on unauthenticated, inadmissible out-of-court emails** that neither Wendy Polisi nor Vaghaiwalla received, advanced by an attorney involved in the attorney cycling scheme with a documented history via signed confessions and two prior admonishments and sanctions for misconduct involving inappropriate out of court emails to a pro se litigant.

## 2. To Silence Plaintiff and Suppress Judicial Criticism

a. Plaintiff has publicly exposed judicial misconduct in both civil and criminal proceedings and challenged Judge Shaffer's authority through a Writ of Prohibition and multiple Letter Briefs.

b. By fast-tracking the contempt proceeding, Judge Shaffer is attempting to strip Plaintiff of his ability to continue exposing systemic corruption and judicial overreach.

c. This is not a neutral application of the law—it is a deliberate effort to suppress dissent and retaliate against a litigant who has demanded judicial accountability.

## 3. To Financially Cripple Plaintiff and Prevent Self-Representation

a. By manipulating procedural rules and advancing a fraudulent contempt charge, Judge Shaffer and Vaghaiwalla are attempting to make continued pro se representation impossible by imposing:

- Unnecessary financial hardship, and
- Extreme litigation burdens.

b. Their objective is clear: Win through financial attrition rather than on the legal merits.

## C. Financial Retaliation and Due Process Violations

4. **Plaintiff has suffered economic devastation as a result of Defendants' actions**, including:

   - The initial extortion by Wendy Polisi, who, while Plaintiff was incarcerated, recorded on the Osceola County Jail phone line that if Plaintiff returned home, she would file another false police report to revoke his $100 bond, subjecting him to six months of incarceration pending trial on State v. Polisi, Case No. 2023-MM-2683.
   - A subsequent Exclusive Use and Possession Order in July 2024, forcing Plaintiff to spend between $4,000 and $6,000 per month on hotels and short-term rentals while simultaneously defending himself in multiple criminal and civil proceedings.

5. **Judge Shaffer and Vaghaiwalla are fully aware of Plaintiff's financial constraints** because:

   - Plaintiff's mandatory financial disclosures in the Unified Family Court proceedings exposed his limited resources.
   - They are deliberately using these financial hardships as a litigation weapon, advancing a contempt hearing while intentionally delaying critical motions, including those affecting:
     - The best interests of Plaintiff's minor child; and
     - Plaintiff's right to seek redress for procedural misconduct.

6. **This pattern of misconduct constitutes a flagrant violation of due process, judicial ethics, and fundamental fairness**, warranting:

   - Immediate appellate intervention,
   - Judicial disqualification, and
   - Formal disciplinary action against Judge Shaffer.

### D. Deprivation of Plaintiff's Sixth Amendment Right to Self-Representation

**7.** Judge Shaffer's misconduct mirrors the unconstitutional tactics attempted by Judge Stefania Jancewicz in State v. Polisi, Case No. 2023-MM-2683, by attempting to strip Plaintiff of his Sixth Amendment right to self-representation.

**8.** Under Faretta v. California, 422 U.S. 806 (1975), a judge cannot exploit procedural mechanisms to impose legal representation on a litigant simply to tilt the scales in favor of opposing counsel. Yet, that is precisely what is occurring here:

- Procedural manipulation is being used as a litigation weapon to punish and disadvantage a self-represented litigant.
- This is not an impartial application of the law but an unconstitutional abuse of judicial authority designed to manufacture a tactical advantage for the opposing party.

**9.** Judge Shaffer's deliberate refusal to disqualify herself, despite a legally sufficient motion, further underscores her bias and bad faith, necessitating immediate intervention by the appellate court.

### XIV. CHIEF JUDGE LISA MUNYON'S DELIBERATE INACTION

### A. Failure to Exercise Judicial Oversight

1. As Chief Judge of the Ninth Judicial Circuit, Defendant Lisa Munyon had a legal duty to oversee judicial conduct and address allegations of judicial misconduct within her jurisdiction.

2. Plaintiff formally notified Judge Munyon through her judicial assistant of ongoing constitutional violations, including:
   a. Due process deprivations;
   b. Retaliatory prosecution; and
   c. Judicial misconduct by Judge Laura Shaffer and other state actors.

3. Despite receiving multiple notifications, Judge Munyon failed to investigate, intervene, or take corrective action, allowing these violations to persist.

B. **Deliberate Indifference and its Consequences**

4. Judge Munyon's failure to act directly enabled continued violations of Plaintiff's constitutional rights, including:
a. Unlawful rulings that deprived Plaintiff of due process;
b. Suppression of procedural safeguards, preventing Plaintiff from obtaining relief; and
c. Retaliation against Plaintiff through fraudulent contempt proceedings.

5. By refusing to exercise her supervisory authority, Judge Munyon emboldened the continued deprivation of Plaintiff's rights, leading to:
a. Unlawful prosecution based on fabricated evidence;
b. Financial hardship resulting from retaliatory litigation tactics; and
c. Obstruction of access to a fair judicial process in both civil and criminal proceedings.

C. **Legal Basis for Liability**

6. Judge Munyon's inaction constitutes deliberate indifference, making her liable under:
a. 42 U.S.C. § 1983 – Failure to intervene despite having actual knowledge of ongoing constitutional violations.
b. 42 U.S.C. § 1985(3) – Enabling a conspiracy to deprive Plaintiff of his rights through continued judicial misconduct.

7. Courts have consistently held that supervisory judicial officers may be held liable when their deliberate indifference results in continued constitutional violations (Dodds v. Richardson, 614 F.3d 1185, 1195 (10th Cir. 2010)).

8. Because Judge Munyon had direct knowledge of judicial misconduct yet failed to act, she is complicit in the constitutional deprivations inflicted upon Plaintiff.

D. **Conclusion**

9. Judge Munyon's deliberate refusal to exercise her supervisory authority facilitated an ongoing pattern of judicial abuse, making her legally accountable for the resulting violations of Plaintiff's rights.

10. Plaintiff seeks declaratory and injunctive relief against Judge Munyon, as well as compensatory and punitive damages, for her role in enabling the deprivation of Plaintiff's constitutional rights.

## XV. UNLAWFUL ARREST, MALICIOUS PROSECUTION, AND JUDICIAL COLLUSION

### A. Unlawful Arrest and Constitutional Violations

1. On November 6, 2023, Plaintiff Vincent R. Polisi, II, was unlawfully arrested based on knowingly fabricated allegations by Officer Kailee Fessock of the Saint Cloud Police Department.

2. This arrest was predicated on a knowingly false police report filed by Defendant Wendy Polisi on November 1, 2023.

3. Finding no legally sufficient grounds for probable cause, and acting in retaliation, members of the Saint Cloud Police Department, led by Officer Kailee Fessock, deliberately fabricated charges and submitted them to Judge Michael Snure, who, without scrutiny, rubber-stamped the arrest warrant.

4. As a result of this unlawful arrest, Plaintiff was incarcerated for nine days without bond, based on inapplicable charges and a prosecution initiated in bad faith in State v. Polisi, Case No. 2023-MM-2683.

5. Despite possessing exculpatory evidence captured on police body-worn camera footage, Defendant Christopher Hill and other prosecutors knowingly pursued baseless charges, violating Plaintiff's Fourth and Fourteenth Amendment rights.

### B. Malicious Prosecution and Due Process Violations

**5.** Plaintiff exercised his right to self-representation under *Faretta v. California*, 422 U.S. 806 (1975), and filed a Notice of Expiration of Speedy Trial Time under Florida Rule of Criminal Procedure 3.191(p)(3), compelling an expedited trial date.

**6.** One week before trial, Plaintiff's Emergency Richardson Hearing exposed prosecutorial misconduct and incompetence, including the State's failure to disclose exculpatory evidence as required under *Brady v. Maryland*, 373 U.S. 83 (1963).

**7.** In response, the State abruptly dismissed all charges but not before attempting a last-minute plea deal, further demonstrating:

   ° Malice in the continued prosecution; and
   ° Lack of probable cause to sustain the charges.

## C. Legal Standards for Malicious Prosecution

**8.** Under Florida law and federal standards for malicious prosecution claims, including *Albright v. Oliver*, 510 U.S. 266 (1994), Plaintiff satisfies all required elements:

   **1.** Initiation or continuation of criminal proceedings – Defendants initiated and pursued charges against Plaintiff without probable cause.
   **2.** Termination in Plaintiff's favor – The dismissal of charges constitutes a favorable termination.
   **3.** Absence of probable cause – The fabricated allegations and suppression of exculpatory evidence demonstrate a lack of reasonable grounds for prosecution.
   **4.** Malice – The State's actions, including withholding evidence and offering an eleventh-hour plea deal, indicate prosecutorial bad faith.
   **5.** Injury to Plaintiff – Plaintiff suffered:
      ▪ Unlawful detention,
      ▪ Reputational harm,
      ▪ Emotional distress,
      ▪ Loss of income and property, and
      ▪ Deprivation of civil rights.

D. **Judicial Collusion and Civil Rights Violations**

**9.** The actions of Officer Kailee Fessock and Defendant Christopher Hill constitute clear violations of 42 U.S.C. § 1983, as they deprived Plaintiff of constitutional rights under color of law, in violation of *Monroe v. Pape*, 365 U.S. 167 (1961).

**10.** Judicial collusion, or failure to address prosecutorial misconduct, may further implicate judicial accountability mechanisms under the Judicial Conduct and Disability Act, 28 U.S.C. §§ 351-364.

E. **Conclusion**

**11.** Plaintiff's arrest, incarceration, and prosecution were driven by fabricated evidence, suppression of exculpatory material, and deliberate misconduct by law enforcement, prosecutors, and judicial officers.

**12.** These constitutional violations necessitate federal intervention to hold Defendants accountable for their unlawful actions.

**RETALIATORY JUDICIAL CONDUCT AND DENIAL OF DUE PROCESS**

Following the dismissal of Plaintiff's criminal case, Defendants engaged in retaliatory judicial misconduct by weaponizing the family court system to deprive Plaintiff of his constitutional rights.

Defendant Judge Christy Collins issued an Exclusive Use and Possession Order barring Plaintiff from his home and effectively modifying custody rights without due process. This order was issued:

- **Without findings of harm**,
- **Without a best-interest analysis**, and
- **Without any lawful justification**,

in violation of Plaintiff's **Fourteenth Amendment rights to due process and equal protection**.

Exclusive Use and Possession Orders are considered an **extreme remedy**, typically granted **only in cases involving domestic violence or other forms of harm** (*Fatima v. Agha*, 2024 ONSC 1441; *Oppong Nketiah v. Oppong Nketiah*, 2021 ONSC 4807). The **absence of such findings** renders Judge Collins' order **unconstitutional** under **established legal principles**.

## THE ABSENCE OF ESSENTIAL FINDINGS RENDERS THIS ORDER UNCONSTITUTIONAL

The State of Florida's Unified Family Law Courts have systematically issued rulings that lack constitutionally required factual findings, rendering such orders unconstitutional under established legal principles.

The failure to provide these essential findings violates:

- Due Process under the Fourteenth Amendment,
- Equal Protection under the Fourteenth Amendment, and
- The Supremacy Clause of the U.S. Constitution, which mandates that federal constitutional protections override conflicting state procedural rules.

State courts cannot ignore federally mandated due process requirements, and orders issued without essential factual findings are legally void under constitutional law.

### 1. DUE PROCESS VIOLATIONS – LACK OF SPECIFIC FINDINGS

Under the Fourteenth Amendment's Due Process Clause, courts must provide specific factual findings and legal conclusions to ensure litigants receive meaningful judicial review. The U.S. Supreme Court has long held that due process requires findings of fact sufficient to support any judicial determination affecting fundamental rights (*Goldberg v. Kelly*, 397 U.S. 254 (1970); *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

- In Florida's Unified Family Law Courts, judicial orders routinely lack the required findings, particularly in cases involving custody, parental rights, and contempt sanctions, thereby violating fundamental due process protections.
- Florida courts' failure to articulate specific legal and factual justifications deprives litigants of their right to meaningful appellate review, directly contravening federal constitutional standards.

Without specific factual findings, judicial orders affecting fundamental rights are unconstitutional, unenforceable, and legally void.

## 2. THE SUPREMACY CLAUSE – FEDERAL CONSTITUTIONAL PROTECTIONS OVERRIDE FLORIDA'S FAMILY LAW RULES

The Supremacy Clause (*Article VI, Clause 2*) of the U.S. Constitution explicitly establishes that federal law supersedes conflicting state laws. State procedural rules —including the Florida Family Law Rules—cannot override constitutionally protected rights.

Despite Plaintiff (Respondent in Case No. 492024DR000135) raising Supremacy Clause challenges at every stage, Florida courts have denied these arguments and instead deferred to state-level administrative procedural rules that fail to meet federal constitutional scrutiny. This rejection of constitutional supremacy directly violates binding U.S. Supreme Court precedent:

- Testa v. Katt, 330 U.S. 386 (1947) – State courts cannot ignore or subordinate federal constitutional mandates.
- Cooper v. Aaron, 358 U.S. 1 (1958) – States are bound by the U.S. Constitution and cannot nullify federal rights through state administrative policies.

- Ex parte Virginia, 100 U.S. 339 (1879) – State courts must adhere to federal constitutional protections, especially in matters implicating due process and equal protection.

By allowing state-level administrative law (Florida Family Law Rules) to override constitutional rights, Florida's Unified Family Law Courts are engaging in a direct violation of the Supremacy Clause, thereby denying litigants the fundamental protections guaranteed by federal law.

### 3. EQUAL PROTECTION – ARBITRARY AND INCONSISTENT ENFORCEMENT

The Florida Family Law Rules are arbitrarily applied, with judges selectively enforcing them without consistent constitutional safeguards. This results in a violation of the Equal Protection Clause of the Fourteenth Amendment:

- **Unequal treatment** – Some litigants receive constitutional protections, while others are subjected to orders with no factual findings, no legal justification, and no means for meaningful review.
- **Weaponized procedure** – By prioritizing state procedural technicalities over federal constitutional rights, Florida's courts are using administrative law to deny justice, disproportionately harming pro se litigants and those challenging judicial misconduct.

The absence of essential judicial findings in Florida Unified Family Law Court orders is not merely a procedural failing—it is a constitutional violation. By allowing state-level procedural rules to supersede federal due process and supremacy protections, Florida's courts are systematically violating the U.S. Constitution, **warranting**:

1. **Immediate federal intervention** to ensure compliance with constitutional due process.
2. Appellate and Supreme Court review to strike down Florida's unlawful prioritization of state administrative law over constitutional mandates.

**3.** Judicial accountability measures to prevent continued violations of Supremacy Clause protections.

Defendant Judge Laura Shaffer engaged in retaliatory misconduct by advancing a fraudulent contempt proceeding based on unauthenticated and inadmissible evidence. This action violated Plaintiff's Fourteenth Amendment rights to due process, as contempt proceedings require strict adherence to procedural safeguards, including the presentation of competent and admissible evidence (*International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821 (1994)). The use of unauthenticated evidence undermines fundamental fairness and constitutes a deprivation of due process under both procedural and substantive standards.

LEGAL FOUNDATION

1. **Procedural Due Process in Contempt Proceedings:**

- The Fourteenth Amendment mandates that no person shall be deprived of life, liberty, or property without due process of law (*Mathews v. Eldridge*, 424 U.S. 319 (1976)).

- In contempt cases, due process includes:
  - Notice,
  - An opportunity to be heard, and
  - The requirement that evidence presented meets admissibility standards (*In re Oliver*, 333 U.S. 257 (1948); *Bagwell*, 512 U.S. at 821).

- Criminal contempt proceedings require heightened procedural safeguards, including:
  - Proof beyond a reasonable doubt, and
  - The right to confront evidence (*Bagwell*, 512 U.S. at 826; *Turner v. Rogers*, 564 U.S. 431 (2011)).
- Reliance on unauthenticated evidence violates these safeguards, as courts must ensure all evidence is properly verified and admissible under Federal

Rule of Evidence 901.

## 2. **Substantive Due Process Violations:**

- Substantive due process protects individuals from arbitrary government actions that "shock the conscience" or are undertaken for purposes unrelated to legitimate state interests (*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)).
- Advancing a fraudulent contempt proceeding based on inadmissible evidence constitutes an arbitrary abuse of judicial authority, violating due process and undermining public confidence in the judiciary (*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009)).

## 3. **Contempt Proceedings and Evidence Standards:**

- Courts consistently hold that contempt proceedings must be grounded in clear, convincing, and admissible evidence (*United States v. Neal*, 101 F.3d 993 (4th Cir. 1996)).
- Fraudulent or unauthenticated evidence fails to meet this standard and invalidates any resulting contempt order.
- Procedural safeguards are especially critical when contempt proceedings result in punitive measures such as fines or incarceration (*Bagwell*, 512 U.S. at 827). Without such safeguards, punitive sanctions are unconstitutional.

## 4. **Judicial Misconduct Under Federal Law:**

- Judicial actions taken with retaliatory intent or in disregard of due process protections may constitute misconduct under Rule 3(h)(1)(G) of the Rules for Judicial-Conduct and Judicial-Disability Proceedings (28 U.S.C. § 351).
- Such actions undermine the integrity of judicial proceedings and violate fundamental constitutional protections.

Defendant Judge Shaffer's advancement of a fraudulent contempt proceeding based on unauthenticated evidence violates Plaintiff's Fourteenth Amendment rights by:

**1.** Denying him procedural fairness and

**2.** Subjecting him to arbitrary judicial retaliation.

These actions not only contravene established legal standards for contempt proceedings but also constitute judicial misconduct warranting corrective measures under federal law (*Bagwell, Mathews, Caperton*).

Plaintiff seeks appropriate remedies for these violations, including:

- Declaratory relief,
- Injunctive relief,
- Compensatory damages for emotional distress, and
- Punitive damages to deter future abuses of judicial authority (*Carey v. Piphus*, 435 U.S. 247 (1978)).

Defendant Judge Laura Shaffer continued a pattern of retaliatory judicial conduct by defying the appellate authority of the Florida Supreme Court after Plaintiff filed a Writ of Prohibition challenging her unlawful assertion of jurisdiction over a contempt proceeding that violated Plaintiff's constitutional rights.

On February 12, 2025, the Florida Supreme Court acknowledged review for jurisdiction over the matter, assigning Case No. SC2025-0198, presupposing that the case was placed under appellate review pursuant to its authority under Article V, Section 3(b)(7) of the Florida Constitution, and due to allegations involving Governor DeSantis.

Despite receiving notice of this potential jurisdictional transfer, Judge Shaffer issued an expedited denial of Plaintiff's Motion to Disqualify within 24 hours, demonstrating:

- Judicial bias,
- Impropriety, and
- A retaliatory motive to preserve her authority over the case to continue retaliating against Plaintiff in the criminal and civil contempt hearing scheduled for Monday, February 17, 2025, at 2:45 PM in the Osceola County Courthouse.

**LEGAL FOUNDATION**

1. **WRIT OF PROHIBITION AS A JURISDICTIONAL REMEDY**

- A writ of prohibition is an extraordinary remedy used to prevent a lower court from acting without or in excess of its jurisdiction (*English v. McCrary*, 348 So. 2d 293, 296 (Fla. 1977)). It is appropriate when no other adequate legal remedy exists and is designed to halt proceedings before harm occurs.

- The Florida Supreme Court has explicit constitutional authority to issue writs of prohibition under Article V, Section 3(b)(7) of the Florida Constitution.

- On February 12, 2025, the Florida Supreme Court acknowledged receipt of Plaintiff's Writ of Prohibition (Case No. SC2025-0198) and is currently reviewing the case to determine whether to assume jurisdiction.

- Despite this pending review, Judge Laura Shaffer has continued issuing rulings, or rather, "a" ruling with that ruling being denying Plaintiff's Motion to Disqualify within 24 hours, despite more than a dozen substantive motions previously filed dealing with issues related to the best interest of the child, the supposed purpose of the Unified Family Court, demonstrating judicial bias and impropriety.

- If the Florida Supreme Court ultimately assumes jurisdiction, any actions taken by Judge Shaffer beyond that point would be void and unconstitutional (*State ex rel. Chiles v. Public Employees Relations Comm'n*, 630 So. 2d 1093, 1094 (Fla. 1994)).

2. **Judicial Disqualification and Bias**

- Under Florida Rule of Judicial Administration 2.330(e), a judge must disqualify themselves if their impartiality might reasonably be questioned or if they exhibit bias or prejudice against a party (*Mackenzie v. Super Kids Bargain Store Inc.*, 565 So. 2d 1332 (Fla. 1990)).

- Upon being informed that a Writ of Prohibition had been submitted and that the Florida Supreme Court had acknowledged receipt, Judge Laura Shaffer

abruptly denied Plaintiff's long-pending Motion to Disqualify, which had remained unresolved for weeks.

- The timing and immediacy of her denial strongly suggest a reactionary and improper exercise of judicial discretion, rather than a reasoned adjudication.

- This conduct raises serious concerns about judicial impartiality and the integrity of the judicial process, as Judge Shaffer's actions indicate a deliberate attempt to retain control over the case despite the pending Supreme Court review.

## 3. IMPROPER EXERCISE OF JURISDICTION DURING PENDING SUPREME COURT REVIEW

- Under Florida Rule of Appellate Procedure 9.100(h), proceedings in the lower tribunal are automatically stayed only upon the issuance of an order to show cause in a writ proceeding. An acknowledgment of jurisdiction or receipt of a filing alone does not trigger an automatic stay.

- Judge Shaffer's denial of Plaintiff's Motion to Disqualify while the case was under review by the Florida Supreme Court—though not yet subject to an automatic stay—raises serious concerns about judicial propriety and adherence to the principles of appellate review.

- Her actions, taken in the shadow of pending Supreme Court proceedings, risk undermining the Supreme Court's supervisory authority, as discussed in *Mintz Truppman, P.A. v. Cozen O'Connor, PLC*, No. SC20-1225, 2022 Fla. LEXIS 1292 (Aug. 25, 2022).

- By proceeding despite the Florida Supreme Court's pending review, Judge Shaffer demonstrated a disregard for the appellate process and further reinforced the appearance of bias and impropriety.

## 4. RETALIATORY AND IMPROPER JUDICIAL CONDUCT

- Judicial retaliation constitutes misconduct under both Florida and federal judicial ethics rules.

- Rule 3(h)(1)(G) of the Rules for Judicial-Conduct and Judicial-Disability Proceedings (28 U.S.C. § 351) explicitly defines judicial misconduct to include acts of retaliation. Such conduct erodes public confidence in the judiciary and violates due process protections under the Fourteenth Amendment (*Caperton v. A.T. Massey Coal Co*., 556 U.S. 868 (2009)).

- Judge Shaffer's denial of Plaintiff's Motion to Disqualify—issued immediately after the Florida Supreme Court acknowledged receipt of Plaintiff's Writ of Prohibition—demonstrates clear judicial retaliation.

- By prioritizing the denial of disqualification while ignoring critical motions related to due process and the best interests of a minor child, Judge Shaffer engaged in selective and improper judicial conduct, warranting appellate review and potential disciplinary action.

**CONCLUSION**

- Judge Shaffer's abrupt denial of Plaintiff's Motion to Disqualify—issued only after learning that the Florida Supreme Court had acknowledged receipt of the Writ of Prohibition—constitutes an improper exercise of judicial discretion. While the Supreme Court had not yet assumed jurisdiction, Judge Shaffer's selective and expedited ruling, following months of inaction on multiple pending motions, raises serious concerns of judicial bias and impropriety (*English v. McCrary*, 348 So. 2d 293 (Fla. 1977); *State ex rel. Chiles v. Public Employees Relations Comm'n*, 630 So. 2d 1093 (Fla. 1994)).

- Despite more than ten pending motions remaining unresolved for months— including those directly affecting the well-being of a minor child—Judge Shaffer selectively acted only on the motion that served her own judicial interest, doing so immediately before a scheduled contempt hearing. This selective action is highly irregular and, when viewed in context, appears retaliatory. Such conduct not only compromises procedural fairness but also sends an implicit message that judicial authority will be exercised in a punitive manner toward litigants seeking appellate review.

- Plaintiff seeks appropriate remedies for these violations, including declaratory relief, injunctive relief, and referral for judicial misconduct proceedings under applicable state and federal guidelines (*Mackenzie v. Super Kids Bargain Store, Inc*., 565 So. 2d 1332 (Fla. 1990); *Sutton v. State*, 975 So. 2d 1073, 1076-77 (Fla. 2008)).

## 5. SYSTEMIC GENDER-BASED BIAS AND EQUAL PROTECTION VIOLATIONS

- Defendants, including Judges Munyon, Shaffer, Collins, and Jancewicz, as well as Wendy Polisi (opposing party), Officer Kailee Fessock (arresting officer), and Attorney Christina M. Green, engaged in a coordinated pattern of conduct that deprived Plaintiff, a male litigant, of his constitutional rights. Their collective actions—including selective enforcement of judicial discretion, retaliatory contempt proceedings, and procedural irregularities—demonstrate a disparate impact based on gender, in violation of the Equal Protection Clause of the Fourteenth Amendment.

- To establish an equal protection violation, Plaintiff must show that similarly situated individuals of the opposite gender were treated differently without a legitimate governmental interest. Here, the coordinated pattern of judicial and legal maneuvers—including the suppression of procedural fairness and the disproportionate application of judicial discretion—raises a presumption of gender-based bias that merits strict judicial scrutiny (*Craig v. Boren*, 429 U.S. 190 (1976)).

- Gender-based classifications are subject to heightened scrutiny under federal constitutional law. The actions taken against Plaintiff resulted in the denial of fundamental procedural fairness, including:

  - Prejudicial rulings,
  - Improper judicial intervention, and

- ○ Selective enforcement of contempt sanctions,

  all without a substantial governmental justification (*United States v. Virginia*, 518 U.S. 515 (1996)).

- The systemic discrimination and procedural manipulation directed at Plaintiff constitute a violation of his fundamental rights under the Fourteenth Amendment. Plaintiff seeks appropriate relief, including:

  - ○ Declaratory judgment,
  - ○ Injunctive relief, and
  - ○ Any other remedy necessary to rectify these constitutional violations.

**Legal Authority**

- Federal courts may enjoin unconstitutional state court actions under 42 U.S.C. § 1983, which provides an express exception to the Anti-Injunction Act (Mitchum v. Foster, 407 U.S. 225 (1972)). Such intervention is warranted when state courts act in bad faith (Dombrowski v. Pfister, 380 U.S. 479 (1965)) or when due process violations render state remedies inadequate (Younger v. Harris, 401 U.S. 37 (1971)).

- Judicial immunity does not bar injunctive relief against state judges engaged in unconstitutional conduct (Pulliam v. Allen, 466 U.S. 522 (1984)). Additionally, federal oversight is justified when state judicial bodies lack impartiality or engage in retaliatory misconduct (Gibson v. Berryhill, 411 U.S. 564 (1973)).

## XVI. CLAIMS FOR RELIEF

## FIRST CLAIM – VIOLATION OF 42 U.S.C. § 1983

*(Against All Defendants Who Are City, Municipal, County, or State Actors)*

Plaintiff incorporates the preceding paragraphs by reference as if fully set forth herein.

1. **Legal Standard**

- 42 U.S.C. § 1983 provides a cause of action against individuals who, under color of state law, deprive persons of constitutional rights (*Monroe v. Pape*, 365 U.S. 167 (1961)).
- The Due Process Clause of the Fourteenth Amendment guarantees procedural fairness before the government may deprive an individual of life, liberty, or property (*Mathews v. Eldridge*, 424 U.S. 319 (1976)).
- The Equal Protection Clause prohibits state actors from selectively enforcing laws or judicial procedures based on gender (*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000)).

## 2. **Defendants' Constitutional Violation**s

- State Attorneys Christopher Hill & Charles Spiteri: Suppressed exculpatory evidence and engaged in malicious prosecution, violating Plaintiff's due process rights (*Brady v. Maryland*, 373 U.S. 83 (1963)).
- Governor Ron DeSantis: Failed to intervene despite direct notification of systemic constitutional violations, thereby allowing continued due process deprivations.
- Judge Lisa Munyon: Enabled judicial misconduct under her supervision, allowing due process violations to persist.
- Law Enforcement Officers Kailee Fessock, Roberto Perez, and Jan Martinez: Fabricated probable cause to justify Plaintiff's unlawful detainment and arrest.
- Judge Laura Shaffer:
  - Denied Plaintiff a fair and impartial tribunal, violating *Tumey v. Ohio*, 273 U.S. 510 (1927).
  - Failed to consider material motions essential for procedural fairness, violating *Goldberg v. Kelly*, 397 U.S. 254 (1970).
- Coordinated gender-based judicial favoritism: Led to procedural disparities favoring Wendy Polisi, depriving Plaintiff of fundamental fairness and equal protection under the law.

## 3. **Resulting Harm to Plaintiff**

- Unlawful detention and loss of liberty.

- Severe financial hardship due to legal expenses and obstruction of procedural fairness.
- Loss of parental rights without due process.
- Emotional distress, reputational damage, and undue hardship.

## 4. Specific Constitutional Violations Under 42 U.S.C. § 1983

- Denial of a fair and impartial tribunal (*Tumey v. Ohio*, 273 U.S. 510 (1927)).
- Failure to consider material motions essential for due process protections (*Goldberg v. Kelly*, 397 U.S. 254 (1970)).
- Retaliatory and fraudulent contempt proceedings designed to silence Plaintiff and deprive him of self-representation (*Ford v. Wainwright*, 477 U.S. 399 (1986)).
- Failure to provide adequate notice and an opportunity to be heard (*Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18 (1981)).
- Suppression of exculpatory evidence and obstruction of access to justice, violating due process (*Brady v. Maryland*, 373 U.S. 83 (1963)).

## 5. Equal Protection Clause Violation – Gender-Based Discrimination

Defendants, including Judges Munyon, Shaffer, Collins, and Jancewicz, the opposing party (Wendy Polisi), the arresting officer (Kailee Fessock), and the attorney responsible for the fraudulent contempt motion (Christina M. Green), acted in concert to systematically deprive Plaintiff, a male litigant, of his constitutional rights.

Their coordinated actions—including:

- Selective enforcement of judicial discretion,
- Retaliatory contempt proceedings, and
- Suppression of procedural fairness—

demonstrate a pattern of judicial favoritism and gender-based bias, violating the Equal Protection Clause of the Fourteenth Amendment.

As a direct and proximate result of Defendants' actions, Plaintiff has suffered irreparable harm, including:

- Unlawful detention and loss of liberty.
- Financial hardship due to legal costs and obstruction of procedural fairness.
- Emotional distress, reputational damage, and undue hardship.

## 6. **Supervisory Liability Under 42 U.S.C. § 1983**

*(Against Chief Judge Lisa Munyon)*

Supervisory liability under § 1983 requires deliberate indifference or tacit approval of misconduct (*Connick v. Thompson*, 563 U.S. 51 (2011)).

- As Chief Judge, Lisa Munyon had an affirmative duty to ensure judicial integrity, investigate judicial misconduct, and enforce compliance with constitutional protections.
- Despite receiving multiple formal notifications, Judge Munyon failed to take corrective action, thereby allowing judicial misconduct and constitutional violations to continue unabated.
- Her deliberate inaction emboldened Defendants to:
  - Suppress due process,
  - Retaliate through contempt proceedings, and
  - Obstruct Plaintiff's constitutional rights.

Judge Munyon's deliberate indifference violated Plaintiff's rights under the Fourteenth Amendment, allowing due process violations to persist, directly contributing to:

- Plaintiff's unlawful prosecution.
- Plaintiff's deprivation of fundamental rights.
- Plaintiff's financial and legal hardship.

Most notably, Judge Munyon was also Chief Judge when Judge Stefania Jancewicz engaged in ex parte communications with State Attorney Christopher Hill, pressuring Plaintiff into accepting an 11th-hour plea deal—a clear attempt to absolve the State and the Ninth Judicial Circuit of liability, indicating an ongoing pattern of corruption.

## XVII. SECOND CLAIM – VIOLATION OF 42 U.S.C. § 1985 (CONSPIRACY

**TO INTERFERE WITH CIVIL RIGHTS)**
**(Against All Defendants)**

Plaintiff incorporates the preceding paragraphs by reference as if fully set forth herein.

1. **Legal Standard**

- A valid claim under 42 U.S.C. § 1985(3) requires:

    1. A conspiracy between two or more persons;
    2. Intent to deprive a person of equal protection under the law;
    3. An overt act taken in furtherance of the conspiracy; and
    4. Resulting injury to the plaintiff (*Kush v. Rutledge*, 460 U.S. 719 (1983)).
- 42 U.S.C. § 1985(3) provides a cause of action against individuals who conspire to deprive a person of equal protection under the law (*Griffin v. Breckenridge*, 403 U.S. 88 (1971)).


2. **Defendants' Conspiracy & Overt Acts**

- Judges Shaffer, Munyon, Collins, and Jancewicz: Engaged in judicial misconduct and issued retaliatory rulings to deprive Plaintiff of due process.
- State Attorneys Christopher Hill & Charles Spiteri: Conspired with judicial officers to sustain baseless criminal charges and suppress exculpatory evidence.
- Attorneys Christina Green & Michael Vaghaiwalla: Manipulated contempt proceedings to target Plaintiff and obstruct procedural fairness.
- Law enforcement officers Kailee Fessock, Roberto Perez, and Jan Martinez: Fabricated criminal charges to justify unlawful arrest and imprisonment.
- Governor Ron DeSantis: Failed to act despite direct notification, thereby enabling systemic due process violations and contributing to the continued conspiracy.


3. **Resulting Harm to Plaintiff**

- Wrongful arrest and prosecution.
- Unlawful contempt proceedings designed to suppress Plaintiff's legal rights.
- Gender-based judicial bias depriving Plaintiff of equal treatment under the law.
- Financial loss, emotional distress, and reputational harm due to the prolonged legal battle and malicious prosecution.

## 4. **Coordinated Scheme to Deprive Plaintiff of Constitutional Rights**

Defendants orchestrated a fraudulent contempt proceeding, using the judicial system as an instrument of oppression to silence Plaintiff and deny his due process and equal protection rights under the law.

- Judge Laura Shaffer: Expedited an unconstitutional contempt proceeding despite procedural and evidentiary deficiencies.
- Board-certified attorney Michael Vaghaiwalla: Assisted in suppressing due process protections and procedural fairness.
- Judge Stefania Jancewicz: Engaged in judicial misconduct to further the conspiracy.
- State Attorneys Christopher Hill and Charles Spiteri: Knowingly prosecuted baseless charges, obstructing justice.
- Officer Kailee Fessock and other law enforcement personnel: Participated in fabricating evidence and violating Plaintiff's Fourth and Fourteenth Amendment rights.
- Independent counsels Christina Green and Michael Vaghaiwalla: Assisted in the attorney cycling scheme and procedural manipulation, further disadvantaging Plaintiff.

## 5. **Overt Acts in Furtherance of the Conspiracy**

Defendants committed multiple overt acts to execute their conspiracy, including:

1. Fabricating legal grounds for contempt to deprive Plaintiff of his right to self-representation.
2. Suppressing exculpatory evidence to obstruct justice and sustain baseless charges.

**3.** Engaging in coordinated ex parte communications to control judicial outcomes in Plaintiff's case.

**4.** Weaponizing procedural delays and legal maneuvering to exhaust Plaintiff's financial and legal resources, preventing him from effectively defending himself.

## 6. **Damages and Injuries Suffered by Plaintiff**

As a direct and foreseeable result of this civil rights conspiracy, Plaintiff has suffered irreparable harm, including:

- Deprivation of liberty due to wrongful arrest and malicious prosecution.
- Financial ruin resulting from prolonged litigation and intentional procedural obstacles.
- Severe emotional distress and reputational damage.
- Obstruction of access to a fair judicial process, further violating Plaintiff's constitutional rights.

Plaintiff seeks compensatory and punitive damages, as well as injunctive relief to prevent further violations of his constitutional rights under 42 U.S.C. § 1985(3).

## XVIII. THIRD CLAIM – DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff incorporates the preceding paragraphs by reference as if fully set forth herein.

## 1. **Legal Standard**

- Judicial immunity does not prevent federal courts from issuing injunctive relief against state judges (*Pulliam v. Allen*, 466 U.S. 522 (1984)).
- 42 U.S.C. § 1983 permits injunctive relief to prevent ongoing violations of constitutional rights by state actors (*Mitchum v. Foster*, 407 U.S. 225 (1972)).

## 2. **Basis for Injunctive Relief**

- Defendants engaged in bad faith prosecution, warranting federal intervention (*Dombrowski v. Pfister*, 380 U.S. 479 (1965)).
- The ongoing contempt proceedings are retaliatory and lack constitutional due process protections.
- State court proceedings have become an instrument of oppression, necessitating federal oversight.

## 3. Relevant Legal Precedent Supporting Injunctive Relief

- Mitchum v. Foster, 407 U.S. 225 (1972) – Establishes that 42 U.S.C. § 1983 creates an express exception to the Anti-Injunction Act (28 U.S.C. § 2283), allowing federal courts to enjoin unconstitutional state court proceedings.
- Dombrowski v. Pfister, 380 U.S. 479 (1965) – Federal intervention is warranted where state courts act in bad faith, with retaliatory motives, or in a pattern of unconstitutional conduct that deprives an individual of their rights.
- Pulliam v. Allen, 466 U.S. 522 (1984) – Judicial immunity does not prevent injunctive relief against state judges who engage in unconstitutional actions.
- Younger v. Harris, 401 U.S. 37 (1971) – Federal courts must abstain from interfering in state court proceedings unless:
  a. The state prosecution is undertaken in bad faith or as harassment.
  b. The state law being enforced is flagrantly unconstitutional on its face.
  c. The state court fails to provide an adequate remedy, making federal intervention necessary.

Plaintiff seeks declaratory and injunctive relief to prevent further constitutional violations and ensure due process protections are upheld.

## XIX. RELIEF REQUESTED

Plaintiff respectfully requests that this Court grant the following relief:

1. **Declaratory Relief**

   ◦ A declaration that Defendants' actions violated Plaintiff's constitutional rights under the First, Fourth, Fifth, and Fourteenth

Amendments.

2. **Injunctive Relief**

   ◦ An order enjoining Defendants from continuing their unconstitutional conduct, including:
     ▪ Retaliatory contempt proceedings against Plaintiff.
     ▪ Selective enforcement of judicial discretion that deprives Plaintiff of due process.
     ▪ State court actions taken in bad faith to suppress Plaintiff's legal rights.

3. **Compensatory Damages**

   ◦ Damages to compensate Plaintiff for:
     ▪ Unlawful arrest and detention.
     ▪ Emotional distress and reputational harm.
     ▪ Financial losses due to legal expenses and obstruction of procedural fairness.

4. **Punitive Damages**

   ◦ Against individual Defendants whose actions were willful, malicious, or taken with reckless disregard for Plaintiff's constitutional rights.

5. **Attorney's Fees and Costs**

   ◦ If legal representation is retained, Plaintiff seeks attorney's fees under 42 U.S.C. § 1988.

6. **Further Relief**

   ◦ Any other relief this Court deems just and proper.

## XX. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## XXI. RESERVATION OF RIGHTS TO AMEND

*Plaintiff expressly reserves the right to **amend this Complaint** under **Fed. R. Civ. P. 15** to include additional defendants or factual allegations as further evidence emerges.*

Respectfully submitted,

*[signature]*

Vincent R. Polisi, II

Plaintiff, Pro Se

8297 Champions Gate Boulevard

Suite 113

Champions Gate, FL, 33896

**vincent@vincentpolisi.com**

407-848-1010