UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

VINCENT R. POLISI, II,
Plaintiff,

v.                                  Case No. 6:25-cv-00256-WWB-LHP

RON DESANTIS, et al.,
Defendants.
_____/

**PLAINTIFF'S MOTION FOR JUDICIAL NOTICE, JUDICIAL ESTOPPEL, AND SANCTIONS REFERRAL BASED ON PARTY-OPPONENT ADMISSIONS OF SYSTEMIC BIAS, POLITICAL CORRUPTION, AND IRREPARABLE CONFLICTS OF INTEREST**

**PREFATORY STATEMENT:** This Motion addresses the extraordinary, public admissions made by Defendant Victoria Avalon ("Avalon"), Director of Appellate and Civil Litigation for the State Attorney's Office of Florida's Tenth Judicial Circuit, who is also a named Defendant herein, which may be difficult for this honorable Court to read, much less believe, coming from a fellow officer of the court.

In a publicly recorded interview during her application for the Florida Supreme Court, Avalon made the following confessions:

- Florida's judiciary is suffering a "crisis" of legitimacy.

- Judicial appointments in Florida are a perceived political sham.

- The judiciary is subject to systemic "groupthink" and public perception of corruption and "payola."

- The judicial selection process is widely believed to be rigged by Defendant Governor Ron DeSantis.

These statements, made under color of her official position and in a proceeding involving judicial integrity, were published in an article dated June 14, 2023, titled, "A timely warning: FL courts becoming victims of groupthink as DeSantis shifts justice to the right," available via Florida Phoenix and The Florida Channel.

**COMES NOW Plaintiff**, Vincent R. Polisi, II ("Plaintiff"), pro se, and respectfully submits this Motion pursuant to Federal Rules of Evidence 201 and 801(d)(2),  the doctrine of Judicial Estoppel (*New Hampshire v. Maine*, 532 U.S. 742 (2001); *Burnes v. Pemco Aeroplex*, Inc., 291 F.3d 1282 (11th Cir. 2002)), and consistent with this Court's inherent authority to regulate the conduct of its officers, including potential sanctions referrals under Rule 11(c) and applicable bar rules, seeking:

2

1.  Judicial Notice of party-opponent admissions by Defendant Victoria Avalon;

2.  Application of Judicial Estoppel against Defendant Avalon and similarly situated Defendants;

3.  Protective Relief barring Defendant Avalon from further participation in Plaintiff's state criminal prosecution;

4.  Referral for professional disciplinary investigation and sanctions as warranted.

## I. INTRODUCTION

This case involves systemic corruption, abuse of process, and retaliatory prosecution. Astonishingly, one of the named Defendants—Victoria Avalon, Director of Appellate and Civil Litigation for the State Attorney's Office, Tenth Judicial Circuit, and currently supervising Plaintiff's ongoing state prosecution, has publicly confessed the exact conduct Plaintiff alleges, both in media interviews and during official proceedings.

Defendant Avalon has:

1.  Publicly admitted systemic judicial corruption, political interference, and prosecutorial bias;

3

2. Explicitly acknowledged Florida courts are dominated by political appointees and groupthink;

3. Accepted a gatekeeping role over Plaintiff's ongoing state criminal case, consolidating control over his prosecution.

## II. FACTUAL BASIS

### A. Defendant Avalon's Public Admissions

On May 3, 2023, while applying for a vacancy on the Florida Supreme Court, Defendant Avalon made the following admissions:

"*We are in a crisis in our country.*"

"*You cannot turn on the television or streaming news without seeing the highest court in this land embroiled in scandal day after day after day. The highest justices in our system accused of improprieties—of taking expensive gifts, expensive vacations.*"

"*It percolates down to everywhere. Everywhere.*"

"*All of [my colleagues] were asking me, why are you wasting your time. Everyone knows who's going to get picked. That may not be true, but it is the perspective.*"

4

"*To the person on the street, that looks like payola. That is a perception that is a cancer in our system, and that's got to change.*"

"*I think that filling a room with like-minded voices—that promotes homogeneity in judicial decisions and that's a bad thing.*"

(*See Exhibit A*, Florida Phoenix article, "A timely warning: FL courts becoming victims of groupthink as DeSantis shifts justice to the right," June 14, 2023).

**B. Defendant Avalon's Active Role in Plaintiff's Prosecution**

By email dated May 21, 2025 (attached as *Exhibit B*), Defendant Avalon wrote to Plaintiff:

"I am Director of Appellate and Civil Litigation for the Office of the State Attorney, Tenth Judicial Circuit. In that capacity, I represent the Office and Tenth Circuit State Attorney, the Honorable Brian Haas, in civil litigation as the Office's internal counsel. I also function as the Office's agent for service of civil process."

"As to service of legal documents in your pending misdemeanor case MM25-1732, you are directed to cease communicating with ASA Scott Matthews, ASA Robert Pyle, and ASA Richard Harris at once. You should

5

serve legal documents in your misdemeanor case upon myself, ASA Allison Fox, and ASA Courtney Durden."

In short, Avalon—who admitted systemic corruption and groupthink—has positioned herself as the controlling gatekeeper of Plaintiff's ongoing criminal case.

## III. LEGAL STANDARD

### A. Judicial Notice

Judicial Notice is appropriate under Fed. R. Evid. 201(b) because:

1.  The article is a widely published, verifiable news report.

2.  Defendant Avalon's recorded remarks are available on government video archives.

### B. Judicial Estoppel

Judicial Estoppel applies where:

1.  A party takes clearly inconsistent positions;

2.  The court is misled or the inconsistency creates unfair advantage. New Hampshire v. Maine, 532 U.S. 742 (2001); Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir. 2002).

6

## C. Ethical Violations and Sanctions

Defendant Avalon has violated:

- Florida Bar Rule 4-1.7 (conflict of interest);

- Canon 2, Florida Code of Judicial Conduct (appearance of impropriety);

- Florida Bar Rule 4-8.4(d) (conduct prejudicial to the administration of justice).

- Florida Statutes §27.14 (conflict of interest provisions for state attorneys).

- Due Process Clause (U.S. Const. Amend. XIV).

*See Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009); *Berger v. United States*, 295 U.S. 78 (1935); *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987).

## D. Fruit of the Poisonous Tree

Any actions, decisions, or prosecutions supervised or undertaken by Defendant Avalon are the fruit of the poisonous tree, tainted by her public admissions of systemic bias, political interference, and conflicts of interest. The entire prosecution of Plaintiff is constitutionally defective and cannot

7

stand. *Wong Sun v. United States*, 371 U.S. 471 (1963)

## IV. APPLICATION TO THIS CASE

Avalon's admissions:

- Are directly inconsistent with any defense asserting the legitimacy of the Florida judiciary in the lower tribunal case 2025-MM-1732.

- Confirm Plaintiff's allegations of systemic state corruption and bias.

- Bar Avalon and co-Defendants from asserting contrary positions in this Court.

- Her continued role as prosecutor in Plaintiff's state case constitutes an ongoing Due Process violation under Caperton, requiring her immediate disqualification in both civil and criminal forums.

- Plaintiff previously filed a Motion to Disqualify Defendant Avalon in the lower tribunal case, citing her demonstrated bias and volatility. However, Plaintiff voluntarily withdrew that motion, expressly stating on the record that Defendant Avalon's continued involvement, her propensity for self-incrimination through misconduct, and self-sabotage of the State's malicious prosecution (filing a traverse *9 days after* the hearing on the motion to dismiss) served the interests of Plaintiff, judicial transparency and preservation of the record. These prior filings, already part of the

8

state record, further confirm the absence of retaliatory animus and reinforce that Defendant Avalon's current disqualification arises from her own public admissions and actions, not Plaintiff's strategy

Her involvement as both a prosecutor in Plaintiff's criminal case and as a defense representative in this civil action is rendered impossible by these public admissions.

## V. ANTI-RETALIATORY DECLARATION

The referrals requested to the Florida Bar and U.S. Department of Justice Public Integrity Section are not for retribution, but because Defendant Avalon's public admissions and active dual roles present clear violations of ethical rules, raising serious questions about her fitness to participate in any prosecution or defense concerning Plaintiff. Plaintiff emphasizes that this referral and disqualification request is not motivated by animus or retaliation. Plaintiff has previously obtained disqualification of Judge John B. Flynn for judicial misconduct in the same underlying state matter, but declined to seek bar/Judicial Qualifications Commission complaints or referrals related to that disqualification, which would have easily layered on to his already public record of sanctions and removal from the bench by the

Supreme Court of Florida, demonstrating Plaintiff's consistent restraint. Here, however, Defendant Avalon's own public admissions compel such action to protect judicial integrity.

## RELIEF REQUESTED

Plaintiff respectfully requests:

1. Judicial Notice of Exhibits A & B pursuant to Fed. R. Evid. 201(b) and admissibility under Fed. R. Evid. 801(d)(2)(A) as party-opponent admissions.

2. Application of Judicial Estoppel precluding Avalon and co-Defendants from denying systemic bias, political interference, or conflicts of interest.

3. Disqualification of Avalon from any role in this case and notice to all co-Defendants that they may not rely on her defense.

4. Judicial Estoppel barring Defendant Avalon from defending the legitimacy of Plaintiff's prosecution.

5. Protective Order barring Defendant Avalon from further participation in Plaintiff's criminal case.

10

6.  Referral of Defendant Avalon to the Florida Bar and U.S. Department of Justice Public Integrity Section.

7.  Any other relief this Court deems just and appropriate.

## VI. CONCLUSION

This is no longer mere allegation. It is verified confession by the very state actor prosecuting Plaintiff. This Court cannot ignore the Defendants' own confessions of systemic corruption and due process violations. This Motion is filed to protect the judicial process and to prevent further irreparable harm.

Respectfully submitted,

/s/ Vincent R. Polisi, II
Vincent R. Polisi, II
Plaintiff, pro se
July 7, 2025

**Certificate of Service**

I hereby certify that a true and correct copy of the foregoing has been electronically filed via CM/ECF and will be served upon all parties who have appeared through the Court's electronic filing system. For defendants not yet served, service will occur following issuance of summonses pursuant to Fed. R. Civ. P. 4.

**Rule 4(m) Compliance Certification**

Plaintiff certifies that this Judicial Notice to the Amended Complaint is filed within the extension period currently pending via motion before the Court pursuant to Rule 4(m), and that service of summons and complaint on all defendants—both originally named and newly added—is underway and will

be effected within the timeframe authorized by the Court. Plaintiff further certifies that a formal request for service by U.S. Marshal pursuant to Fed. R. Civ. P. 4(c)(3) has already been made and is also pending before the Court.

**CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with formatting and font requirements

under: • Rule 1.08 of the Local Rules of the Middle District of Florida, and,

•Judge Berger's Standing Order (6:21-mc-3-Orl-78).

This document was prepared using 14-point Arial font, double-spaced, with

1" margins and page numbering bottom center.

CIVIL RIGHTS    CRIMINAL JUSTICE    CULTURE & SOCIETY    POLITICS & LAW

# A timely warning: FL courts becoming victims of groupthink as DeSantis shifts justice to the right

Supreme Court candidate warned selection panel of growing 'crisis'

BY: **MICHAEL MOLINE** - JUNE 14, 2023    3:01 PM

      



**Exhibit A**
**Avalon's Quotes Related to:**
**doubts about judicial legitimacy**
**have reached**
**"crisis" level.**
**https://floridaphoenix.com/**
**2023/06/14/a-timely-warning-fl-**
**courts-becoming-victims-of-**
**groupthink-as-desantis-shifts-**
**justice-to-the-right/**

https://floridaphoenix.com/2023/06/14/a-timely-warning-fl-courts-becoming-victims-of-groupthink-as-desantis-shifts-justice-to-the-right/

📷 The Florida Supreme Court building. (Photo by Michael M...

The panel that screens Florida Supreme Court nominees for Gov. Ron DeSantis got more than its members may have bargained for when veteran prosecutor Victoria Avalon appeared before them on May 3. They got a warning about the judiciary's legitimacy.

Her jeremiad touched on Justice Clarence Thomas' acceptance of expensive gifts at the U.S. Supreme Court as well as the fairness of Florida's judicial nominations process, created by former Gov. Reubin Askew in 1971 following improprieties by justices of the Florida

Supreme Court. The idea was to remove politics from the process but, under Republican governors, that independence has been lost.

Avalon asserted during her interview, one of 15 the Florida Supreme Court Judicial Nominating Commission heard that day, that doubts about judicial legitimacy have reached "crisis" level. (The Phoenix reviewed the Florida Channel video of those 20-minute interviews in preparing this story.)

"We are in a crisis in our country," she said.

"You cannot turn on the television or streaming news without seeing the highest court in this land embroiled in scandal day after day after day. The highest justices in our system accused of improprieties — of taking expensive gifts, expensive vacations," she said.

"We think that that does not percolate down to Florida. Well, it percolates down to everywhere. Everywhere," she said.

"I am not throwing any shade on anyone in this room, or anyone involved in the judicial selection process," Avalon stressed. The West Virginia native is director of appellate and civil litigation in the state's attorney's office for Polk, Highlands, and Hardee Counties who worked as a volunteer EMT during college and served stints as an Army MP and corrections and probation officer.

## Perceptions



📷 Victoria Avalon.
Source: Florida Bar

"I'm talking about perceptions here, not about reality. There is a reason that when you all opened applications for the most prestigious seat in Florida's judiciary that you got three applications." Indeed, the JNC had to reopen the nominations to attract more applicants.

"And it is not because you only had a week to apply. When I applied it took me less than an hour to put my application together. Anyone who aspires to judicial office has one ready and can edit it and send it," Avalon continued.

Rather, Avalon reported a perception out there that the fix was in — that DeSantis had already made his choice and it was up to the panel to go through the motions of independence. Avalon

knew of this perception, she said, because of the responses of her co-workers in the court system when they learned she was applying.

"All of them were asking me, why are you wasting your time. Everyone knows who's going to get picked. That may not be true, but it is the perspective," Avalon said.

Members of the selection panel doing the interviews appeared taken aback by Avalon's comments. And in fact, they didn't recommend her for the Florida Supreme Court vacancy.

## Pre-ordained

On May 23, DeSantis chose Meredith Sasso, former chief judge of the newly created Sixth District Court of Appeal. Headquartered in Lakeland, the new court covers Hardee, Highlands, Polk Counties, Charlotte, Collier, Glades, Hendry, Lee, Orange, and Osceola Counties.

But Avalon made a fair point, said Bob Jarvis, professor of constitutional law at the Nova Southeastern University Shepard Broad College of Law, in an email to the Phoenix.

"The fact that JNC picks are pre-ordained is an open secret," Jarvis wrote.

"As I regularly tell my students, the JNC system, which was supposed to be independent (and functioned as such originally), now is merely a rubber stamp for the governor. Thus, rather than going out and finding the best judicial candidates, the JNC today does the governor's bidding," Jarvis continued.



📷 Surrounded by family, Judge Renatha Francis accepts her nomination by Gov. Ron DeSantis to the Florida Supreme Court on Aug. 5, 2022. Credit: Governor's office

But, since taking office in January 2019, and now in the first year of his second term while running for president, DeSantis has remade the state high court, having appointed five of its seven justices (and that may understate his influence, since two of the governor's initial picks have been elevated to the U.S. Court of Appeals for the Eleventh Circuit).

Only one justice sitting in Tallahassee – Jorge Labarga, appointed by Charlie Crist when Crist was a Republican governor – could be considered moderate or liberal leaning.

The new court, overwhelmingly dominated by conservative members of the Federalist Society for Law and Public Policy Studies, ostensibly a debating society but in practice a machine for launching young lawyers into the conservative legal movement, has proven more than willing to do away with even well-settled precedent, notably regarding the death penalty.

The Supreme Court selection process transpired as the court deliberates on whether to uphold the 15-week abortion ban the Legislature passed last year and that DeSantis signed into law. The six-week ban that followed this year is contingent on the court upholding the earlier legislation.

Upholding the ban would require the court to overrule its 1989 precedent in In re T.W., holding that the voter-approved privacy clause in the Florida Constitution extends to the right to seek abortions.

Doing that to a constitutional ruling that has stood for decades would not be popular: Some 75% of registered Florida voters polled in March by the University of North Florida were somewhat or strongly opposed to the six-week ban. But of course, the U.S. Supreme Court reversed Roe v. Wade notwithstanding broad public support for abortion rights.

We asked JNC chairman Fred Karlinsky, a shareholder in the Greenberg Traurig law firm, to respond to the suggestion the process was pre-ordained but did not hear back.

## Recusal?

Meanwhile, Justice Charles Canady, who, according to the Tampa Bay Times, earned an anti-abortion reputation in his former job as a congressman, is married to Republican State Rep. Jennifer Canady, co-sponsor of this year's six-week abortion ban. He's given no indication that he plans to recuse from the case.

Asked about that, court spokesman Paul Flemming told the Phoenix, "Activity in the case is noted in the docket. Any significant action will be announced by us when it happens – email and Twitter alerts, on the website, and included in the docket. There have been no recusals in the case."

Jamie Grosshans, another DeSantis appointee to the state high court, was affiliated with the Alliance Defending Freedom, organized "to keep the doors open for the Gospel by advocating for religious liberty, the sanctity of human life, freedom of speech, and marriage and family," the Tampa Bay Times also reported.

Intriguingly, Chief Justice Carlos Muñiz, who's reputation is solidly conservative, wrote in a 2004 article that "[o]ne purpose of the privacy amendment clearly was to give the abortion right a textual foundation in our state constitution," The Washington Post reported this spring. Without explanation, he did not participate in an order issued by the court in January allowing the 15-week ban to take effect pending a final ruling. Without explanation, neither Muñiz nor Justice Renatha Francis participated in the order.

## Stare decisis

Leonard Leo, listed as co-chairman of the board of directors and former executive vice president of the Federalist Society, vetted federal court nominees for former President Donald Trump, including the three U.S. Supreme Court nominees who cast the critical votes to overturn Roe v. Wade. Society members dominate Florida's JNCs for the state Supreme Court and lower courts and Leo reportedly advises DeSantis on judges as well.

Additionally, last year a Chicago electronics magnate gave $1.6 billion to a Leo-led dark money group called the Marble Freedom Fund to invest in Republican causes and candidates, according to reporting by The New York Times.

The only person on the list of six that the panel sent as possible replacements for Polston who didn't report a Federalist Society affiliation in his paperwork was Michael Thomas McHugh, chief judge of the Twentieth Judicial Circuit in Fort Myers.



📷 Bob Jarvis. Credit: Nova Southeastern University

"The principle of stare decisis [adherence to precedent] currently is dead at the Florida Supreme Court. That is the logical outcome of a group (the Federalist Society) that has a specific agenda (e.g., overturning abortion rights) and is willing to do whatever it takes to fulfill its agenda," Jarvis, of Nova Law, told the Phoenix.

"Thus, it should come as no surprise to anyone that any candidate who currently is being seriously looked at for appointment to the Florida Supreme Court does not feel the least bit constrained by stare decisis," Jarvis wrote.

Stare decisis – intended "to promote consistent, predictable rulings on cases of similar nature" – and judicial legitimacy were clearly on the panel's minds. During the interviews, Timothy Cerio, president, CEO, and executive director of Citizens Property Insurance Corp., and other panelists asked candidates about them specifically.

This after Pro Publica reported in April that Justice Thomas hadn't disclosed expensive gifts and travel given to him by billionaire Harlan Crow. Later it emerged that Crow had bought Thomas' mother's house and paid his grand-nephew's public-school fees. He hadn't disclosed

those, either. As of May 24, 41% percent of Americans approved of the nation's highest court, CNN reported.

In Tallahassee, meanwhile, there's been a game of musical chairs going on at the state Supreme Court, with two justices leaving for high-paying jobs and allowing DeSantis to name his allies as their replacements.

Sasso, for example, replaces Ricky Polston, who left to become general counsel of Citizens Property Insurance Corp. but shortly left there to become a partner at the politically connected Shutts & Bowen law firm. Alan Lawson, appointed to the court by Scott in 2012, left at the end of August to become a new named partner in Lawson Huck Gonzalez, another law firm with political juice.

## 'Misunderstanding'

📷 Meredith Sasso is pictured with Gov. Ron DeSantis and her children in this photo released on May 23, 2023, following her appointment to the Florida Supreme Court. Credit: governor's office

Judging by the interviews that day in May, it wasn't clear the most of the lawyers being screened or their screeners appreciated Avalon's point.

Sasso, for example, acknowledged "institutional attacks that we see on the court's legitimacy" but suggested only that the justices "show our work in opinions to show that we're following the law" and take public-speaking opportunities so as not to "cloister ourselves even more as a result of attacks."

Cerio insisted at one point during the interviews, "The public and the media attack the institution, question the legitimacy because they don't like the outcome."

Jared Edward Smith, another Sixth District Court of Appeal judge who'd applied for the state Supreme Court appointment, blamed "a misunderstanding in general of what the role of a judge is."

"People think of judges as the fix-alls. They think somehow because you wear a black robe that you then are the fixer of all societal problems. And that if somebody brings a case in front of a

judge, whether it's a Supreme Court or local judge, they're just supposed to fix all the problems. And if they don't, then it's the judge's fault," he said.

"They don't realize that judges are supposed to be, at least, constrained by the law and the Constitution, and ultimately if there needs to be a change it's not the judge, typically that makes those changes, it's the Legislature."

### 'Optics matter'

Avalon noted during her interview that she has participated in four grand jury investigations into public corruption.

"The lesson that I drew from that all of that is that appearances matter, optics matter. We who deal in the justice system perhaps have faith that the judiciary isn't affected by such things, but to the person on the street that looks like payola. That is a perception that is a cancer in our system, and that's got to change."

Jesse Panuccio, a partner in Boies Schiller Flexer's Washington and Fort Lauderdale offices who serves on the JNC and participated in the interviews, seemed offended at the payola reference.

"Anyone can make an accusation about the judiciary, judges," he told Avalon. "As members of the Bar, what obligation do we have to dispel those accusations or rebut them when they're not true rather than repeat them or give air to them?"

"I wasn't accusing the highest court in the land of payola. What I was telling you is that that's what it looks like to the grassroots," Avalon answered. "I don't know what's going up there. I just know what people on the street are going to see that as."

In a telephone interview this week, Avalon told the Phoenix that she was unsurprised by the JNC's pick. She noted that Sasso is well connected, having served as an aide to former Gov. Rick Scott and as the founding chief judge of the Sixth District court. She's married to attorney Michael A. Sasso, appointed by DeSantis to screen judges for the Sixth district courts of appeal.

All JNC members, Avalon said, are "picked by one person who presumably is looking for people who are like him," meaning the governor, "and they're going to pick someone like them. Someone with the right friends and right connections."

### 'Groupthink'

As originally designed, the governor of Florida named three members of the state Supreme Court JNC, who didn't need to be lawyers; the Florida Bar nominated another three of its members; and those six selected another three nonlawyers. In 2001, however, then-Gov. Jeb Bush instigated a change that gave governors sole appointment authority to these panels.

Now Avalon worries about "groupthink" within the judiciary, with judges reinforcing each others' approaches to the law and prejudices.

Avalon counts among her friends members of the American Constitution Society who espouse a "living constitution," one interpreted according to contemporary social norms. To herself, a self-described "textualist" and former member of the Federalist Society, this is "heresy," she said.

Still, judicial interpretation benefits from a conversation between those two or additional schools of thought, Avalon believes.

📷 Florida Supreme Court. Credit: Shutterstock.com

"I think that filling a room with like-minded voices — that promotes homogeneity in judicial decisions and that's a bad thing." Rather, a "cacophony of voices" is "more likely to come up collectively with a better product than an echo chamber" would.

"I am a blue-collar lawyer. I don't have a megaphone. No one's listening to me. It is likely that when I walk out that door none of you will ever see me again and I will go back to Bartow and practice law. But each of you has influence. You have a megaphone," Avalon said during her May interview.

"Colleagues, you and I hold the keys to an entire branch of our justice system. We're lawyers, and that comes with a sacred trust, and we have to be careful how it's discharged."

*Clarification: Michael A. Sasso, husband of newly appointed Justice Meredith Sasso, serves on the JNC for the Sixth District Court of Appeal. Michael C. Sasso, his father and law partner, serves on the JNC for the Fifth District Court of Appeal.*



REPUBLISH

*Our stories may be republished online or in print under Creative Commons license CC BY-NC-ND 4.0. We ask that you edit only for style or to shorten, provide proper attribution and link to our website. AP and Getty images may not be republished. Please see our republishing guidelines for use of any other photos and graphics.*



## MICHAEL MOLINE

Michael Moline has covered politics and the legal system for more than 30 years. He is a former managing editor of the San Francisco Daily Journal and former assistant managing editor of The National Law Journal. He also is a former editor of the Florida Flambeau in Tallahassee.

Florida Phoenix is part of States Newsroom, the nation's largest state-focused nonprofit news organization.

**MORE FROM AUTHOR**

**MORE FROM OUR NEWSROOM**

**Camping bans, penalties after Supreme Court ruling could worsen homelessness, experts say**

BY **MICHAEL LYLE**

December 24, 2024

**Judges topple gun restrictions as courts chart an uncertain path forward**

BY **MATT VASILOGAMBROS**

December 20, 2024



## QUALITY JOURNALISM FOR CRITICAL TIMES

**DEMOCRACY TOOLKIT**

The Phoenix is a nonprofit news site that's free of advertising and free to readers. We cover state government and politics with a staff of five journalists located at the Florida Press Center in downtown Tallahassee.

We're part of States Newsroom, the nation's largest state-focused nonprofit news organization.

DEIJ Policy | Ethics Policy | Privacy Policy



Our stories may be republished online or in print under Creative Commons license CC BY-NC-ND 4.0. We ask that you edit only for style or to shorten, provide proper attribution and link to our website. (See full republishing guidelines.)

© Florida Phoenix, 2025

v1.86.0

**STATES NEWSROOM**

**FAIR. FEARLESS. FREE.**

Victoria Avalon<vavalon@SAO10.COM>

To: You; vincent@vincentpolisi.com; vpolisi@gmail.com

Cc: Brian Haas; Jacob Orr; Melissa Lasater; Allison Fox; Scott A. Matthews; Richard W. Harris; +1 other

Wed 5/21/2025 11:39 AM

**!** High importance

Mr. Polisi:

I am Director of Appellate and Civil Litigation for the Office of the State Attorney, Tenth Judicial Circuit. In that capacity, I represent the Office and Tenth Circuit State Attorney, the Honorable Brian Haas, in civil litigation as the Office's internal counsel. I also function as the Office's agent for service of civil process.

I direct you to cease sending any communications to Mr. Haas immediately. You may send such communications to me. My electronic service addresses are noted in the service receipt from the E-Portal as to your motion to disqualify the State Attorney's Office, and Melissa Lasater, who is copied here, is my secretary. For your convenience, those addresses are vavalon@sao10.com, mlasater@sao10.com, and appeals.felonypolk@sao10.com. Rest assured that I will discuss any of your communications that I deem necessary of such consultation with Mr. Haas.

As to service of legal documents in your pending misdemeanor case MM25-1732, you are directed to cease communicating with ASA Scott Matthews, ASA Robert Pyle, and ASA Richard Harris at once. You should serve legal documents in your misdemeanor case upon myself, ASA Allison Fox, afox@sao10.com , and to ASA Courtney Durden, who may be served by way of the e-service addresses cdurden@sao10.com and felonypolk@sao10.com . ASA Fox, ASA Durden, and I are the only personnel in our office whom you should attempt to contact regarding your case until further notice.

Sincerely,

Victoria J. Avalon
Assistant State Attorney
Director of Appellate and Civil Litigation
State Attorney's Office, 10th Judicial Circuit
P.O. Box 9000-SA
Bartow, FL 33831-9000
vavalon@sao10.com
(863) 534-4800
E-service: appeals.felonypolk@sao10.com

**Exhibit B
Email From Avalon to Plaintiff
Announcing dual-role as lead prosecutor and
civil liability counsel for State Attorney Brian Haas
in a 2nd degree misdemeanor criminal case**